UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULSTRA CRC CORPORATION,

        Plaintiff,

v.

SMITHCNC, LLC and
DOUGLAS R. SMITH,

        Defendants.
_____/

File No. 1:11-CV-185

HON. ROBERT HOLMES BELL

**O P I N I O N**

      This matter is before the Court on Plaintiff Paulstra CRC Corporation's motion for summary judgment against Defendants SmithCNC, LLC and Douglas R. Smith. (Dkt. No. 29.) On February 22, 2011, Paulstra brought suit against SmithCNC and Smith for breach of contract. (Dkt. No. 1, Compl.) On April 2, 2012, Paulstra brought the present motion for summary judgment, requesting the Court enter judgment in its favor and award it damages. (Dkt. No. 29.) For the reasons that follow, this motion will be granted as to liability but denied as to damages. The Court also gives notice of its intent to appoint Magistrate Judge Joseph Scoville as master, pursuant to Federal Rule of Civil Procedure 53(a) and 53(h), to recommend findings of fact on the computation of damages.

I.

      SmithCNC was a supplier of automobile components to Paulstra. (Dkt. No. 1, Compl. ¶ 6.) The components supplied by SmithCNC supported Paulstra's production obligations

for a number of General Motors Corporation ("GM") programs. (*Id.* ¶ 7.) In 2010, a need arose to expedite the shipping of components from overseas suppliers in order to prevent a possible shutdown of GM's production lines. (Dkt. No. 30, Ex. 1, ¶ 5.) To accommodate this need, the overseas suppliers shipped the components by air and the freight costs were paid by Paulstra. (Dkt. No. 37, Exs. 14A, 14B, and 14C.)

On July 15, 2010, SmithCNC and Paulstra entered into a signed agreement. (Dkt. No. 30, Ex. 1.) This agreement stated that SmithCNC owed Paulstra $640,093 for advances paid by Paulstra, which included the cost of the air freight. (*Id.*) While the agreement left the exact mode of repayment left to be decided, it did include a personal guarantee of the debt by Douglas Smith. (Dkt. No. 30, Ex. 3.)

Issues continued to exist between Paulstra and SmithCNC, resulting in a November 9, 2010, settlement agreement that also involved GM. (Dkt. No. 30, Ex. 4.) Pursuant to this agreement, GM agreed to pay $397,385.55 to SmithCNC in exchange for necessary tooling equipment, outstanding freight charges, and parts possessed by the overseas supplier, Panalpina. (*Id.* ¶ 2(a).) In recognition of the advances paid by Paulstra and the guarantee of Smith, GM agreed to wire $250,000 of this payment directly to Paulstra to apply against the outstanding balance on the advances. (*Id.* ¶ 2(b)(ii).) In exchange for this direct payment, Paulstra agreed not to seek any redress against SmithCNC for the advances until December 1, 2010. (*Id.* ¶ 2(b)(iii).) In this November agreement, SmithCNC also promised to authorize its suppliers to ship directly to Paulstra. (*Id.* ¶ 3(e).)

On February 22, 2011, Paulstra filed the present lawsuit seeking damages for breach of the July contract. (Dkt. No. 1, Compl.) Paulstra seeks the amount of unpaid advances allegedly owed by SmithCNC and Smith, in addition to legal expenses and attorneys fees. (*Id.*)

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. Liability**

*1. July Contract*

"The question of whether the language of a written agreement is ambiguous is one of law; therefore, 'it may be resolved summarily.'" *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988)). "If a contract is clear and unambiguous . . . there is no issue of fact to be determined." *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (quoting *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir.2000)).

Paulstra's claims against SmithCNC and Smith stem from the July agreement which provided that "Smith CNC recognizes that Paulstra has advanced at least $640,093 and that Smith CNC owes Paulstra this money & anything else advanced in future." (Dkt. No. 30, Ex. 1.) The agreement recognized that parts were shipped by SmithCNC between March and the date of the agreement and that Paulstra would credit the cost of these parts as a partial offset to the $640,093 owed by SmithCNC. (*Id.*) The agreement further stated that within the next week, SmithCNC and Paulstra would work to "develop the plan for repayment further," but that such a plan would require full repayment by the end of November and that Paulstra would be repaid by (a) SmithCNC accepting a decreased price per component supplied to Paulstra and (b) Paulstra crediting the resultant saved money to the outstanding balance. (*Id.*)

4

As part of the agreement, Douglas Smith promised to personally guarantee the debt owed to Paulstra. The full copy of the signed guarantee stated that Smith "personally guarantees, absolutely and unconditionally, the full and prompt payment when due, and at all times thereafter of any and all existing and future indebtedness, thereof, now or hereafter owing from SmithCNC-USA LLC . . . to Paulstra CRC Corporation . . . ." (Dkt. No. 30, Ex. 3.)

Paulstra asserts that this agreement contained all material terms and is a valid and enforceable contract. SmithCNC disputes this assertion, alleging instead that this agreement was vague and ambiguous. Additionally, SmithCNC alleges that this document was merely an "acknowledgment of dispute" and left the amount owed uncertain. These allegations by SmithCNC are belied by the agreement itself. The agreement is unambiguous. It clearly states that SmithCNC owed Paulstra $640,093 and that this money was owed by the end of November. The only ambiguity was the exact manner of the repayment and how much the total amount owed would be offset by Paulstra crediting SmithCNC for the parts that had already been shipped between March and the date of the contract. This was not an "agreement to work in good faith" that lacked any obligations for the parties other than to negotiate. (Dkt. No. 36, at 17.)

Moreover, SmithCNC and Smith affirmed the validity of the July contract in the November Settlement Agreement which they signed. This agreement stated as an "Acknowledged Fact" that "Paulstra has made certain loans to Smith (the 'Advances'),

5

which Advances have been personally guaranteed by D. Smith." (Dkt. No. 30, Ex. 4.) This contract also contained a non-waiver of claims by Paulstra against SmithCNC and Smith for the remainder of the advances still owed:

> Paulstra in no way waives its right to enforce any obligations owing to it from Smith or D. Smith, including, without limitation, the obligations of D. Smith under the Personal Guaranty dated July, 2010 securing the repayment by Smith of all liabilities and indebtedness to Paulstra, including, without limitation, its liability for the repayment of the Advances.

(*Id.* ¶ 8.) While the November agreement primarily regarded a different issue (GM's purchase of tooling equipment from SmithCNC), Paulstra promised in the agreement to forbear from exercising its rights under the July agreement until December 1, 2010, in exchange for SmithCNC allowing GM to wire $250,000 of the payment owed SmithCNC directly to Paulstra for credit towards SmithCNC's debt. (*Id.* ¶ 2(b)(ii).)

In the alternative, SmithCNC argues that even if the Court finds the July agreement valid, it is unenforceable because Paulstra was the first party to breach the agreement. (Dkt. No. 36, at 18.) However, SmithCNC's argument refers to the original purchase order contracts between the parties. Paulstra allegedly breached these contracts by ignoring a lead time requirement for SmithCNC and then attempting to charge SmithCNC through the July agreement for the resultant air freight charges which were incurred.

But even if Paulstra breached the initial purchase order contracts, those contracts are not at issue. Instead, the July agreement is at issue, and there is no suggestion that Paulstra has breached this contract. SmithCNC knowingly signed and agreed to the amount owed as

expressed in the July agreement, which unambiguously included charges for expedited air freight. SmithCNC should not have signed this contract if it believed that Paulstra was obligated to pay for the air freight. SmithCNC did not raise this argument at the time of the July agreement, nor did it raise it when it signed the November settlement agreement which acknowledged this debt.

In conclusion, the July agreement is clear and unambiguous. Thus, the Court finds that SmithCNC and Smith are liable as a matter of law for any amount owed on this contract.

### 2. *October Email*

However, SmithCNC and Smith argue that even if they are liable under the July agreement, Paulstra is not entitled to summary judgment because damages are an element of Paulstra's claim and there are issues of material fact as to whether Paulstra suffered any damages under this contract. (Dkt. No. 36, at 16-17.) SmithCNC alleges that on October 18, 2010, SmithCNC and Paulstra agreed do "drastically modify their contractual obligations." (Dkt. No. 36, at 9.) In support, SmithCNC provides an email from Paulstra representatives to Doug Smith summarizing a telephone conversation:

> Smith CNC agrees that it will direct both Shandong Liancheng Group and Jian Huicheng Foundry to allow Paulstra to buy parts direct (cutting Smith CNC out of the middle) at the price formerly paid by Smith CNC . . . . Paulstra agrees that in return, it will credit any savings AND debit any increased costs (delta from current price paid by Paulstra to Smith CNC) against the debt owed by SmithCNC to Paulstra.

(Dkt. No. 36, Ex. 16.) SmithCNC alleges that Paulstra has not credited any amount to SmithCNC per this agreement. It estimates the credit due is between $297,000 and

7

$530,640, essentially eliminating any damages claimed by Paulstra. (Dkt. No. 36, at 11.) Paulstra counters that this October email is parol evidence. In essence, it alleges that the email was a recitation of the parties' negotiations in October and these negotiations resulted in the November settlement agreement which contained a merger clause.

Paulstra is correct. The November settlement agreement explicitly provided that SmithCNC and Smith agree "[t]o promptly request and authorize HC, Panalpina and LMC to sell Parts or services directly to Paulstra at the same pricing previously paid by Smith and to provide Panalpina, HC, and LMC historical pricing data to Paulstra." (Dkt. No. 30, Ex. 4, ¶ 3(3).) There was no corresponding guarantee by Paulstra to credit the amount saved to SmithCNC's debt in return.

SmithCNC contends that this corresponding guarantee is absent because the settlement agreement primarily concerned GM and the tooling issue (as opposed to the advances issue), and thus only laid out the terms which impacted GM. This contention is inaccurate. First, the November settlement agreement did contain more terms than just those that affected GM. There is a direct reference to the July agreement between Paulstra and SmithCNC, an agreement which did not involve GM. (Dkt. No. 30, Ex. 4, ¶ 8.) This clause explicitly preserved Paulstra's rights under the July agreement, yet makes no mention of the alleged October agreement. There are also indirect references to the July agreement, including to Doug Smith's personal guaranty. (Dkt. No. 30, Ex. 4, ¶¶ 1, 2(b)(iii).) Notably, these references include no mention of any October agreement. Second, the contract contains

8

a promise by Paulstra to credit $250,000 to SmithCNC's debt, showing that offsets to the debt were clearly discussed as part of the settlement agreement and within its scope.

Additionally, SmithCNC contends that the November agreement's acknowledgment of the advances owed to Paulstra incorporated Paulstra's obligations under the alleged October agreement.  (Dkt. No. 36, at 14-15.)  This is belied by the terms of the November agreement, which contained an explicit merger clause stating that the contract contained "all of the terms between the parties with regard to its subject matter" and superseded "all prior or written representations" regarding its subject matter.  (Dkt. No. 30, Ex. 4, ¶ 14.)  SmithCNC contends this clause does not apply because the subject matter of the entire agreement was the resolution of the tooling issue.  However, the shipment of parts directly to Paulstra (cutting out SmithCNC as middleman) was explicitly *part* of the contract's subject matter.  Thus, there can be no dispute that this merger clause is valid as to the alleged October agreement which concerned the exact same subject matter.  The absence of any mention of the October offsets in the November settlement agreement, in light of such an unambiguous merger clause, speaks for itself.

Thus, the Court finds that the October email was merged into the November settlement agreement and carries no weight.  Because there is no genuine issue of material fact concerning the July agreement and the liability of SmithCNC and Smith under that contract, Paulstra is entitled to summary judgment as a matter of law.

9

**B. Damages**

However, even though Paulstra is entitled to judgment as to liability, it is not entitled to summary judgment as to damages. In its brief accompanying its motion for summary judgment, Paulstra stated that it seeks $317,345.95 for the amount of advances still owed plus attorneys fees. (Dkt. No. 30, at 1.) However, the complaint alleges that a different number – $321,666 – is owed. (Dkt. No. 1, ¶¶ 26-27, 34.) Moreover, while there is consistency within Paulstra's filings as to the amount of the damages which is attributable to the advances owed pursuant to the July agreement ($291,855) (Dkt. No. 1, Compl. ¶¶ 26, 34; Dkt. No. 30, Ex. 1, ¶ 18), Paulstra provides no basis for this number, meaning that neither the Court nor Defendants can verify it.

Taking the $640,093 owed under the July agreement, and subtracting the $250,000 agreed-upon credit from the November agreement, leaves $390,093. This means that Paulstra has presumably credited SmithCNC $98,238 for (a) the March shipments referenced in the July agreement and/or (b) credits from accepting parts from SmithCNC at a reduced price pursuant to the July agreement. But without evidence, the Court cannot determine whether Paulstra actually applied credit for the offsets referenced in the July agreement, or, if it did, whether it applied the correct credit for these offsets.

It is not the Court's role to add and subtract numbers for the parties, meaning that it is necessary for the two parties to sit down together with their accountants and books to figure out the appropriate amount owed under the July agreement. To aid in this process, the

10

Court hereby gives notice of its intent to appoint Magistrate Judge Joseph Scoville as master, pursuant to Federal Rule of Civil Procedure 53(a) and 53(h), to recommend findings of fact on the computation of damages.  Should the parties desire to be heard on this issue, they shall file their comments within fourteen days of this notice.

    An order consistent with this opinion will be entered.


Dated: <u>October 18, 2012</u>                             /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE